UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

ZOLTAN FRENKEL,

Plaintiff,

**NOTICE OF REMOVAL**

Case No. 08 Civ. _____

-against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X



**08 CV 6050**

**TO:    THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK**

Defendant, by and through its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully shows this Court as follows:

1.    On or about January 2, 2008, the New York City Law Department, received by mail a Summons and Complaint, in the above-entitled action, pending in the Supreme Court of the State of New York, County of New York, Index No.100706/08, naming the New York City Off-Track Betting Corporation, as the defendant, and setting forth the claims for relief upon which the action is based.  A copy of plaintiff's Summons and Complaint is annexed hereto as Exhibit "A."

2.    On or about March 24, 2008, defendant filed a motion to dismiss pursuant to New York Civil Practice Law and Rules ("CPLR") § 3211(a)(7) on the grounds that the Complaint fails to state a cause of action.  A copy of defendant's Notice of Motion, Affirmation in Support, and Memorandum of Law is annexed hereto as Exhibit "B."

3. On or about June 10, 1008, defendant received opposition papers in response to defendant's motion to dismiss from plaintiff, including plaintiff's Verified First Amended Complaint. A copy of plaintiff's opposition and Verified First Amended Complaint is annexed hereto as Exhibit "C."

4. The above-captioned action is a civil action of which the District Court has original jurisdiction in that it includes a cause of action which arises under the Constitution and laws of the United States, pursuant to 42 U.S.C. §1331. This action is therefore removable to the District Court without regard to the citizenship or residence of the parties, pursuant to 28 U.S.C. §§ 1441(b) and 1443.

5. Plaintiff brings this lawsuit claiming, inter alia, that defendant deprived plaintiff of his rights in violation of 42 U.S.C. § 1983. See generally Verified First Amended Complaint at Exhibit "C."

6. This Notice of Removal is timely because it is being filed within thirty days (30) days of receipt of the initial pleading. See 28 U.S.C. § 1446(b).

7. Defendant will promptly file a copy of this Notice of Removal with the Clerk of the state court in which the action has been pending.

**WHEREFORE**, defendant respectfully requests that the above-captioned action be removed from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

Dated:        New York, New York
              July 2, 2008

                             MICHAEL A. CARDOZO
                             Corporation Counsel of the
                               City of New York
                             Attorney for Defendant
                             100 Church Street, Room 2-125
                             New York, New York  10007
                             cheer@law.nyc.gov
                             (212) 788-0960

                     By:     _____
                             Christopher L. Heer
                             Assistant Corporation Counsel

TO:     Bernard Weinreb, Esq.
        Attorney for Plaintiff
        286A North Main Street
        Spring Valley, New York 10977

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.

--------------------------------------------------------------X

ZOLTAN FRENKEL
     Plaintiff,

Plaintiff designated
NEW YORK
as the place of trial

The basis of the venue
**Principle Office of
Defendant**

    -against-

SUMMONS

NEW YORK CITY OFF-TRACK
BETTING CORPORATION
    Defendants

Defendant's Principal Office
is in New York, New York

Plaintiff resides at
Sullivan County, New York

--------------------------------------------------------------X

To the above named Defendant:

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney within twenty (20) days after the service of this summons, exclusive of the date of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear to answer, Judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Suffern, New York
      December 27, 2007

To: New York City Off-Track Betting Corporation
    c/o NYC Corporation Counsel
    100 Church St.
    New York, NY 10007

                BERNARD WEINREB, ESQ.
                Attorney for Plaintiff
                286A N. Main Street
                Spring Valley, New York 10977
                (845) 369-1019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    Index No.

-----------------------------------------------------------X

ZOLTAN FRENKEL,
                Plaintiff,

                                                    **COMPLAINT**

        -against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,
                Defendant.

-----------------------------------------------------------X

Plaintiff, complaining of the defendant herein by his attorney, BERNARD
WEINREB, ESQ., respectfully sets forth and alleges as follows:

## AS AND FOR A FIRST CAUSE OF ACTION
### RELIGIOUS DISCRIMINATION - NYC HUMAN RIGHTS LAW

1.      Plaintiff, Zoltan Frenkel, is a "person" as defined by Section 8-102(1) of
the N.Y.C. Human Rights Law, N.Y.C. Admin. Code Section 8-102(1). Plaintiff is
employed by the defendant, New York City Off-Track Betting Corporation (this
defendant is hereinafter referred to as "Employer") as an Electronic Technician. He has
been employed with the Employer since January 8, 1979.

2.      At all times relevant to this action, the Employer was an agency of the City
of New York, was conducting business in New York City, New York and was an
"employer" within the meaning of Section 8-102(5) of the N.Y.C. Human Rights Law,
Section 8-102(5) of the N.Y.C. Admin. Code. The Employer has had at least 4
employees working for it throughout the period that Plaintiff was employed by the
Employer.

3.      As set forth below in this Complaint, Plaintiff was subjected to a hostile
work environment and was otherwise discriminated against on the basis of his religion
by the Employer. He was also retaliated against for opposing the discrimination. In
addition, the Employer has been in breach of a settlement agreement entered into by
Plaintiff and Defendant in May 2004, and Plaintiff is seeking redress for such breach.

4.      Plaintiff is an Orthodox Jew who observes the Sabbath.

5.    On October 20, 2003, Plaintiff brought a lawsuit against the Employer in which he alleged that, on account of his religion, he was not promoted to a supervisory position, even though he was qualified for the position.

6.    In August 2004, the lawsuit was settled.

7.    As part of the settlement, Plaintiff was promoted to the position of supervisor.

8.    Starting in September 2004, shortly after Plaintiff's promotion, Plaintiff began being subjected to ongoing harassment by his supervisors and co-workers, with the tacit of approval of management.

9.    The word was leaked out by the Employer that Plaintiff's promotion was given to him and was not competed for in a fair manner, causing resentment to his co-employees who were also vying for that position.

10.    Whereas other employees who received promotions to supervisor after Plaintiff received congratulatory letters, no such letter was issued with respect to Plaintiff's appointment as supervisor. This different treatment made it obvious to employees that Plaintiff's promotion was a forced promotion.

11.    Plaintiff's subordinates were insubordinate to Plaintiff, by not following his instructions and by otherwise acting in an inappropriate manner on an ongoing and steady basis towards Plaintiff but management condoned this insubordination. When Plaintiff complained to management about this, his complaints were ignored and, on some occasions, he was the one who was criticized.

12.    Plaintiff's subordinate, Kenny Fingeret, constantly made anti-semitic comments to Plaintiff, saying that the Jews should be pushed into the sea, and similar comments. In addition, Mr. Fingeret constantly listened to hate radio at work in Plaintiff's presence. The Employer was aware of all these actions by Mr. Fingeret, but did nothing about it.

13.    On one occasion, Plaintiff found an article about Kapos -- individuals who carried out he will of Nazi camp commandants and guards -- on his desk. Mr. Fingeret admitted bringing in this article, which was placed on Plaintiff's desk. Plaintiff complained to managment about this, but nothing was done.

14. Employees vandalized Plaintiff's property. For example, Plaintiff's car was keyed (scratched up by a metal object), his new chair was slashed, and coffee was poured on his chair and stepped upon to leave footprints. Although Plaintiff complained to management about this vandalism, nothing was done.

15. The Employer made sure to have videos of employees not working and being involved in non-work related activities while on the job only at the time that Plaintiff was on duty as supervisor, but the Employer did not record these employees, or other employees, slacking off in this manner during any other supervisor's shift. Upon information and belief, this different treatment was done to foster animosity against Plaintiff by the employees who were reported by Plaintiff to have been slacking off. The employees caught slacking off were not brought up on charges.

16. Defendant also encouraged the employees of the Employer's central repair facility, at which Plaintiff worked, to file complaints regarding Plaintiff to the Employer's internal Equal Employment Opportunity Commission ("EEO").

17. The individuals in charge of the Employer's internal EEO, Doreen Wong and Martin Tall, were hostile towards Plaintiff and did not investigate the claims against Plaintiff in a fair manner. For example, Ms. Wong and Mr. Tall would not ask Plaintiff to provide them with his side of the story when investigating claims made against Plaintiff. By contrast, when Plaintiff complained about anti-semitic behavior to Ms. Wong and Mr. Tall, they dismissed the claim without investigating the matter.

18. Management continuously made up rules and procedures for Plaintiff to put into effect for his subordinates while he was a supervisor. When the employees did not follow these rules, managment dropped these rules instead of bringing these employees up on charges for insubordination. (Two days after Plaintiff's demotion, these rules were reinstated and began being enforced against the Plaintiff only.)

19. Plaintiff's superior, Executive Director Carmelo Fanfan, regularly took the side of Plaintiff's subordinates when Plaintiff had issues with his subordinates and co-workers.

20. In a June 10, 2005 communication to Plaintiff, instead of being supportive of Plaintiff when Plaintiff expected his subordinates to comply with his orders, Mr.

Fanfan called Plaintiff a "dictator" in describing Plaintiff's dealings with his subordinates.

21.    Following the June 10 communication, instead of bringing up Plaintiff's subordinates for insuborination, and backing up Plaintiff, Plaintiff was sent to supervisory training.

22.    Eventually, after not supporting Plaintiff and making it seem as if the problem was with Plaintiff, as opposed to those who were insubordinate to Plaintiff, Mr. Fanfan demoted the Plaintiff from his supervisory position back to Electronic Technician. This demotion was discriminatory as Plaintiff was correct in directing and, if necessary, disciplining his subordinates. Upon information and belief, from the time Plaintiff was promoted, managment, upset by the promotion resulting from the settlement, were seeking to have Plaintiff demoted.

23.    In December 2005, Plaintiff was instructed to "train" other supervisors. Upon information and belief, this was done to rile up the other supervisors against Plaintiff so that they should resent the fact that this new supervisor, i.e, the Plaintiff, is training them. Incidentally, the fact that the Employer had Plaintiff train other supervisors supports Plaintiff's assertion that he was an effective and knowledgable supervisor.

24.    During the 20 months that Plaintiff was supervisor, he was never written up, whereas other supervisors were written up. This is a further indication that Plaintiff performed satisfactorily as a supervisor.

25.    While Plaintiff was a supervisor, new rules that previously did not exist, were put into effect. Shortly after his demotion, these rules were revoked. Upon information and belief, these rules were created for the purpose of setting Plaintiff up for failure.

26.    For example, while Plaintiff was a supervisor, Plaintiff was not permitted to send technicians from one borough to another borough. This rule negatively affected the efficiency of Plaintiff's work. Before Plaintiff was a supervisor, there was no such rule. This rule was revoked shortly after Plaintiff was demoted. (In fact, after his demotion, Plaintiff himself was sent by his supervisor to work in several boroughs.)

27.    While Plaintiff was a supervisor, technicians were permitted to decide with whom they wished to work based on their seniority. As a result of the negative information being spread by Plaintiff's superiors and co-workers about Plaintiff, technicians did not want to work under him. Thus, Plaintiff was either forced to work with the least experienced technicians, negatively impacting on his production, or forced Plaintiff to do the job himself without any assistance. Before Plaintiff was a supervisor, there was no such seniority rule, thus permitting supervisors to select the most skilled technicians to assist him. This rule was revoked shortly after Plaintiff was demoted.

28.    Plaintiff was discriminated against after being demoted as well. For example, Plaintiff was given only $100 to purchase work shoes while other technicians were given more money to purchase work shoes. There was also a significant delay in Plaintiff receiving his work shoes.

29.    Further, while other employees are often given the opportunity to work overtime, Plaintiff is regularly overlooked for overtime. When Plaintiff complained about his unfair exclusion from receiving overtime work, Plaintiff's supervisor told him similar to the following: "Mistakes can happen; and you may not be called at all." Plaintiff continued to be overlooked for overtime after being told this comment. (This failure to give Plaintiff overtime work is also a breach of the settlement agreement relating the previous lawsuit, pursuant to which the Employer promised that it will not discriminate against Plaintiff with respect to providing him with overtime opportunities on an equal basis with other employees.)

30.    Plaintiff was forced to work overtime on Thanksgiving in 2006, even though that was Plaintiff's scheduled day off. By contrast to Plaintiff, other employees were not forced to work a holiday on their days off. When Plaintiff complained about this unfair treatment, the Employer tried to switch Plaintiff's schedule in such a manner that it could avoid paying him overtime.

31.    The Employer kept on making payroll errors regarding Plaintiff,

32.    The Employer delayed providing Plaintiff with an appropriate van at work but did not delay providing appropriate vans to other employees who needed them.

33.    Management has been aware of ongoing cursing at Plaintiff by Supervisors Long and Lazerus and technicians Miranda, Monaco, Mario and other employees. Yet, management has not taken any actions against these employees.

34.    After Plaintiff's demotion, he was required by his supervisor to call in on arrival and to sign in and out of Branch offices upon arrival and departure. This was not required of other employees.

35.    When Plaintiff was supervisor, Employer had a rule that technicians may not be rerouted after they were on the way to an assignment, because to do so would be considered harassment. After Plaintiff's demotion, he has been rerouted by his supervisor on several occasions.

36.    When Plaintiff needed a handicapped parking spot, he was given a much more difficult time by the Employer in obtaining the right to such a spot than other employees who needed such spot.

37.    Plaintiff was subjected to a hostile work environment at the Employer that was severe and pervasive.

38.    The Employer, by harassing Plaintiff, has discriminated against Plaintiff on the basis of his religion in violation of the N.Y.C. Human Rights Law.

39.    As a result of the Defendants' discriminatory actions described in this First Cause of Action, Plaintiff has suffered a loss in wages. Further, Plaintiff has suffered personal injuries including, but not limited to, emotional distress, humiliation, mental anguish and loss of enjoyment of life, and is entitled to compensatory damages.

40.    A copy of this complaint has been filed with the New York City Commission on Human Rights and the New York City Corporation Counsel.

## AS AND FOR A SECOND CAUSE OF ACTION
## RETALIATION - NEW YORK CITY HUMAN RIGHTS LAW DISCRIMINATION

41.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 as if set forth fully herein.

41A.    Following Plaintiff's lawsuit and settlement of such lawsuit, in which Plaintiff complained of religious discrimination relating to promotions, Plaintiff was discriminated against and otherwise treated badly by the Employer, as described above in the complaint. Upon information and belief, such bad treatment was in retaliation for

Plaintiff's claim of religious discrimination in violation of the N.Y.C. Human Rights Law.

42.    As a result of such retaliation, Plaintiff has suffered a loss in wages. Further, Plaintiff has suffered personal injuries including, but not limited to, emotional distress, humiliation, mental anguish and loss of enjoyment of life, and is entitled to compensatory damages.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

43.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 as if set forth fully herein.

44.    Following the lawsuit alleging religious discrimination brought by Plaintiff in 2003, the parties entered into a settlement agreement in August 2004 to resolve the lawsuit. The agreement provided for certain compensation and certain other rights to be granted to Plaintiff, the relevant ones which will be discussed below.

45.    The Employer violated the terms of the settlement agreement, in that Plaintiff was not subsequently given increases in salary taking into account his retroactive increase in salary pursuant to the settlement in the amount of $19,999.99.

46.    Similarly, under the terms of the settlement agreement the Employer promised to provide Plaintiff with overtime opportunities on an equal basis with other employees. In violation of the agreement, the Employer did not give such opportunities to Plaintiff on an equal basis with other employees. On the rare occasion that Plaintiff was called to do overtime, he was accused of "milking the job," making the job last longer than it was supposed to.

47.    Also, with respect to overtime, whereas other employees who came in on overtime days were permitted to work the entire day, from 7 a.m. to 6:45 p.m., Plaintiff was required to stop working on his overtime day at 2 p.m., thus, depriving him of an extra 4.75 hours of work and overtime pay

48.    As a result of the Defendants' actions described in this Third Cause of Action Plaintiff has been damaged in the amount of approximately $25,000.00

WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

1.    On the First Cause of Action, the sum of ONE MILLION ($1,000,000.00)

DOLLARS, in damages for lost wages and compensatory damages, plus statutory attorneys fees.

2.    On the Second Cause of Action, the sum of ONE MILLION ($1,000,000.00) DOLLARS, in damages for lost wages and compensatory damages, plus statutory attorneys fees.

3.    On the Third Cause of Action, the sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS, plus an order compelling Defendant to comply with the terms of the August 2004 settlement agreement.

, together with the costs and disbursements of this action.

Dated: Suffern, New York
      December 12, 2007

Bernard Weinreb, Esq.
Attorney for Plaintiff
286A N. Main Street
Spring Valley, New York 10977
(845) 369-1019

To: New York City Off-Track
    Betting Corporation

8

Index No.:

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

-------------------------------------------------------------------

ZOLTAN FRENKEL,
          Plaintiff,

    -against-

NEW YORK CITY OFF-TRACK
BETTING CORPORATION
        Defendant.

-------------------------------------------------------------------

### SUMMONS AND COMPLAINT

-------------------------------------------------------------------

BERNARD WEINREB, ESQ.
Attorney for Plaintiff
286A N. Main Street
P.O. Box 1126
Spring Valley, New York 10977
(845) 369-1019

-------------------------------------------------------------------

To:

Attorney for Defendant

-------------------------------------------------------------------

Service of a copy of the within

                    is hereby admitted

Dated,

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------- x
ZOLTAN FRENKEL,

**NOTICE OF MOTION**

Plaintiff,        Index No.: 100706 08

-against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

Defendant.

---------------------------------------------------------------------- x


   **PLEASE TAKE NOTICE,** that upon the annexed Affirmation of Assistant

Corporation Counsel Christopher L. Heer in Support of Defendant's Motion to Dismiss, dated

March 21, 2008, the exhibits annexed thereto, the Memorandum of Law in Support of

Defendant's Motion to Dismiss, dated March 21, 2008, and all of the papers and proceedings

heretofore had and filed herein, the defendants will move this Court, in Room 130 of the Motion

Support office at the Supreme Court, 60 Centre Street, in the County of New York, on the 21st

day of April, 2008, at 9:30 A.M. or as soon thereafter as counsel can be heard, for an Order

  a) Pursuant to CPLR §3211(a)(7) dismissing Plaintiff's Action on the grounds that
   the Complaint fails to state a cause of action,

  b) for such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 2214(b) of the CPLR, answering papers, if any, shall be served on the undersigned at least seven days before the return date herein and reply papers, if any, shall be served at least one day before the return date.

**PLEASE TAKE FURTHER NOTICE** that, in the event of denial by the Court of its motion to dismiss the complaint, defendant reserves the right pursuant to CPLR 3211(f) to serve a pleading responsive to the complaint, and respectfully requests permission to serve such responsive pleading within twenty days after service of notice of entry of the order denying its motion.

Dated: New York, New York
      March 21, 2008

                          **MICHAEL A. CARDOZO**
                          Corporation Counsel of the
                            City of New York
                          Attorney for the Defendant
                          100 Church Street, Room 2-317
                          New York, New York  10007
                          (212) 788-0960

By:                      
                          Christopher L. Heer
                          Assistant Corporation Counsel

TO:    Bernard Weinreb, Esq.
        Attorney for Plaintiff
        286A North Main Street
        Spring Valley, New York 10977
        (845) 369-1019

Index No.: 100706 08

| |
|---|
| SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF NEW YORK |

ZOLTAN FRENKEL,

Plaintiff,

-against-

NEW YORK CITY OFF-TRACK BETTING CORPORATION,

Defendant.

---

## NOTICE OF MOTION

---

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-317
New York, N.Y. 10007-2601


Of Counsel: Christopher L. Heer
Tel: (212) 788-0960


NYCLIS No. 2008-000147

---

*Due and timely service is hereby admitted.*

New York, N.Y. .........................................., 2008

*Signed:* ....................................................................

*Attorney for* ...........................................................

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x

ZOLTAN FRENKEL,

                              Plaintiff,

-against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

                         Defendant.

-------------------------------------------------------------------- x

**AFFIRMATION OF
CHRISTOPHER L. HEER IN
SUPPORT OF
DEFENDANT'S MOTION TO
DISMISS**

Index No.: 100706/08

      **CHRISTOPHER L. HEER**, an attorney duly admitted to practice before the Courts of the State of New York, affirms pursuant to the penalties of perjury:

      1.    I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for defendant in the above-captioned action. I am familiar with the facts set forth below based upon my personal knowledge and a review of the papers in this proceeding. This affirmation is also based upon the records of the New York City Off-Track Betting Corporation ("OTB") and conversations with employees of OTB.

      2.    Plaintiff commenced the instant action by serving a Summons and Complaint on defendant on or around January 23, 2008. The parties agreed by Stipulation that the defendant's time to respond to the complaint was extended to March 21, 2008.

      3.    As explained more fully below, defendant OTB submits this affirmation in support of OTB's motion to dismiss the complaint pursuant to Rule 3211(a)(7) of the New York Civil Practice Law and Rules ("CPLR") on the ground that the complaint fails to state a cause of action because plaintiff has failed to comply with the Notice of Claim requirements contained in § 618 of the Racing, Pari-Mutuel Wagering and Breeding Law ("Racing Law").

**A.    Background and Procedural History.**

4.    On or about January 8, 1979, plaintiff began employment with defendant as an Electronic Technician.  See Complaint annexed hereto as Exhibit "A" at ¶ 1.  Plaintiff is an Orthodox Jew who observes the Sabbath.  Id. at ¶ 4.  On October 20, 2003, Plaintiff filed a lawsuit against defendant claiming that he was not promoted on account of his religion.  Id. at ¶ 5.  In or around August 2004, a settlement was entered into between the parties, resulting in discontinuance of the lawsuit by plaintiff.  In connection with the settlement, plaintiff was promoted to the position of Supervising Electronic Technician.  Id. at ¶ 6-7.

5.    Plaintiff claims that beginning in or around September 2004, he was subjected to ongoing harassment by his supervisors and co-workers with alleged tacit approval from OTB management.  Id. at ¶ 8.

6.    Plaintiff claims that on or about June 10, 2005, plaintiff's supervisor, Executive Director Carmelo Fanfan called plaintiff a "dictator" when describing plaintiff's interaction with his subordinates.  Id. at ¶ 20.  Some time thereafter, plaintiff was demoted from his supervisory position back to his prior position as an Electronic Technician.  Id. at ¶ 22.  Plaintiff does not provide a date of the alleged demotion; however he contends that the harassment started in September 2004, shortly after his promotion, and that he served as a supervisor for twenty (20) months.  See Complaint, ¶¶ 8 and 24 and generally.

7.    Plaintiff alleges that the discrimination continued after his demotion, and it appears that the claimed discrimination culminated after being forced to work overtime on Thanksgiving in 2006 and being given only $100 to purchase work shoes.  Id. at ¶¶ 28, 30.

8.    Plaintiff's complaint is devoid of any allegations of wrongdoing occurring at any time during 2007.  See Complaint generally.

9.    Plaintiff alleges in his Complaint that defendant OTB: (1) subjected him to a hostile work environment, id. at ¶ 37; (2) discriminated against him on the basis of his religion, id. at ¶ 38; (3) retaliated against him for his prior lawsuit and settlement agreement, id. at ¶ 41A; and (4) breached the August 2004 settlement agreement, id. at ¶ 44.

**B.    Failure to Comply with Racing Law § 618.**

10.    It is black-letter law that pursuant to Racing Law § 618 an action against the OTB shall not be commenced "… unless a notice of claim … shall have been served upon the corporation within ninety days after such cause of action accrued." See Racing Law § 618(5). In the instant matter, plaintiff has failed to comply with the requirements of Racing Law § 618 by failing to serve any notice of claim upon the defendant, let alone doing so within ninety days of accrual of the claims he asserts in his complaint. Accordingly plaintiff's Complaint must be dismissed. See also Racing Law § 618(1)("in every action … the complaint shall contain an allegation that at least thirty days has elapsed since notice of claim was presented to the corporation ….")

11.    A search of the records regularly maintained by OTB reflects that plaintiff has not served a Notice of Claim in the instant action nor does the Complaint allege that any Notice of Claim was filed. See Affidavit of Barbara S. Eisman, sworn to March 21, 2008, and annexed hereto as Exhibit "B."

12.    No prior application for the relief sought in this motion has been made in this case.

**WHEREFORE**, defendant respectfully requests that this Court grant its motion and dismiss the complaint in its entirety, with costs, fees, and disbursements.

Dated: New York, New York
       March 21, 2008

Christopher L. Heer
Assistant Corporation Counsel

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK          Index No.
COUNTY OF NEW YORK
------------------------------------------------------------X
ZOLTAN FRENKEL                                   Plaintiff designated
    Plaintiff,                  NEW YORK
                                                 as the place of trial

                                                 The basis of the venue
                                                 **Principle Office of**
                                                 **Defendant**


    -against-

                                                 SUMMONS

NEW YORK CITY OFF-TRACK
BETTING CORPORATION                              Defendant's Principal Office
    Defendants                  is in New York, New York

                                                 Plaintiff resides at
                                                 Sullivan County, New York
------------------------------------------------------------X

To the above named Defendant:

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney within twenty (20) days after the service of this summons, exclusive of the date of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear to answer, Judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  Suffern, New York
        December 27, 2007

To: New York City Off-Track Betting Corporation
    c/o NYC Corporation Counsel
    100 Church St.
    New York, NY 10007

                        BERNARD WEINREB, ESQ.
                        Attorney for Plaintiff
                        286A N. Main Street
                        Spring Valley, New York 10977
                        (845) 369-1019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    Index No.

------------------------------------------------------------X

ZOLTAN FRENKEL,
          Plaintiff,

**COMPLAINT**

     -against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,
         Defendant.

------------------------------------------------------------X

     Plaintiff, complaining of the defendant herein by his attorney, BERNARD
WEINREB, ESQ., respectfully sets forth and alleges as follows:

### AS AND FOR A FIRST CAUSE OF ACTION
### RELIGIOUS DISCRIMINATION - NYC HUMAN RIGHTS LAW

     1.     Plaintiff, Zoltan Frenkel, is a "person" as defined by Section 8-102(1) of
the N.Y.C. Human Rights Law, N.Y.C. Admin. Code Section 8-102(1). Plaintiff is
employed by the defendant, New York City Off-Track Betting Corporation (this
defendant is hereinafter referred to as "Employer") as an Electronic Technician. He has
been employed with the Employer since January 8, 1979.

     2.     At all times relevant to this action, the Employer was an agency of the City
of New York, was conducting business in New York City, New York and was an
"employer" within the meaning of Section 8-102(5) of the N.Y.C. Human Rights Law,
Section 8-102(5) of the N.Y.C. Admin. Code. The Employer has had at least 4
employees working for it throughout the period that Plaintiff was employed by the
Employer.

     3.     As set forth below in this Complaint, Plaintiff was subjected to a hostile
work environment and was otherwise discriminated against on the basis of his religion
by the Employer. He was also retaliated against for opposing the discrimination. In
addition, the Employer has been in breach of a settlement agreement entered into by
Plaintiff and Defendant in May 2004, and Plaintiff is seeking redress for such breach.

     4.     Plaintiff is an Orthodox Jew who observes the Sabbath.

5.     On October 20, 2003, Plaintiff brought a lawsuit against the Employer in which he alleged that, on account of his religion, he was not promoted to a supervisory position, even though he was qualified for the position.

6.     In August 2004, the lawsuit was settled.

7.     As part of the settlement, Plaintiff was promoted to the position of supervisor.

8.     Starting in September 2004, shortly after Plaintiff's promotion, Plaintiff began being subjected to ongoing harassment by his supervisors and co-workers, with the tacit of approval of management.

9.     The word was leaked out by the Employer that Plaintiff's promotion was given to him and was not competed for in a fair manner, causing resentment to his co-employees who were also vying for that position.

10.     Whereas other employees who received promotions to supervisor after Plaintiff received congratulatory letters, no such letter was issued with respect to Plaintiff's appointment as supervisor.  This different treatment made it obvious to employees that Plaintiff's promotion was a forced promotion.

11.     Plaintiff's subordinates were insubordinate to Plaintiff, by not following his instructions and by otherwise acting in an inappropriate manner on an ongoing and steady basis towards Plaintiff but management condoned this insubordination.  When Plaintiff complained to management about this, his complaints were ignored and, on some occasions, he was the one who was criticized.

12.     Plaintiff's subordinate, Kenny Fingeret, constantly made anti-semitic comments to Plaintiff, saying that the Jews should be pushed into the sea, and similar comments.  In addition, Mr. Fingeret constantly listened to hate radio at work in Plaintiff's presence.  The Employer was aware of all these actions by Mr. Fingeret, but did nothing about it.

13.     On one occasion, Plaintiff found an article about Kapos -- individuals who carried out he will of Nazi camp commandants and guards -- on his desk.  Mr. Fingeret admitted bringing in this article, which was placed on Plaintiff's desk.  Plaintiff complained to managment about this, but nothing was done.

14.    Employees vandalized Plaintiff's property. For example, Plaintiff's car was keyed (scratched up by a metal object), his new chair was slashed, and coffee was poured on his chair and stepped upon to leave footprints. Although Plaintiff complained to management about this vandalism, nothing was done.

15.    The Employer made sure to have videos of employees not working and being involved in non-work related activities while on the job only at the time that Plaintiff was on duty as supervisor, but the Employer did not record these employees, or other employees, slacking off in this manner during any other supervisor's shift. Upon information and belief, this different treatment was done to foster animosity against Plaintiff by the employees who were reported by Plaintiff to have been slacking off. The employees caught slacking off were not brought up on charges.

16.    Defendant also encouraged the employees of the Employer's central repair facility, at which Plaintiff worked, to file complaints regarding Plaintiff to the Employer's internal Equal Employment Opportunity Commission ("EEO").

17.    The individuals in charge of the Employer's internal EEO, Doreen Wong and Martin Tall, were hostile towards Plaintiff and did not investigate the claims against Plaintiff in a fair manner. For example, Ms. Wong and Mr. Tall would not ask Plaintiff to provide them with his side of the story when investigating claims made against Plaintiff. By contrast, when Plaintiff complained about anti-semitic behavior to Ms. Wong and Mr. Tall, they dismissed the claim without investigating the matter.

18.    Management continuously made up rules and procedures for Plaintiff to put into effect for his subordinates while he was a supervisor. When the employees did not follow these rules, managment dropped these rules instead of bringing these employees up on charges for insubordination. (Two days after Plaintiff's demotion, these rules were reinstated and began being enforced against the Plaintiff only.)

19.    Plaintiff's superior, Executive Director Carmelo Fanfan, regularly took the side of Plaintiff's subordinates when Plaintiff had issues with his subordinates and co-workers.

20.    In a June 10, 2005 communication to Plaintiff, instead of being supportive of Plaintiff when Plaintiff expected his subordinates to comply with his orders, Mr.

3

Fanfan called Plaintiff a "dictator" in describing Plaintiff's dealings with his subordinates.

21.    Following the June 10 communication, instead of bringing up Plaintiff's subordinates for insubordination, and backing up Plaintiff, Plaintiff was sent to supervisory training.

22.    Eventually, after not supporting Plaintiff and making it seem as if the problem was with Plaintiff, as opposed to those who were insubordinate to Plaintiff, Mr. Fanfan demoted the Plaintiff from his supervisory position back to Electronic Technician. This demotion was discriminatory as Plaintiff was correct in directing and, if necessary, disciplining his subordinates. Upon information and belief, from the time Plaintiff was promoted, managment, upset by the promotion resulting from the settlement, were seeking to have Plaintiff demoted.

23.    In December 2005, Plaintiff was instructed to "train" other supervisors. Upon information and belief, this was done to rile up the other supervisors against Plaintiff so that they should resent the fact that this new supervisor, i.e., the Plaintiff, is training them. Incidentally, the fact that the Employer had Plaintiff train other supervisors supports Plaintiff's assertion that he was an effective and knowledgable supervisor.

24.    During the 20 months that Plaintiff was supervisor, he was never written up, whereas other supervisors were written up. This is a further indication that Plaintiff performed satisfactorily as a supervisor.

25.    While Plaintiff was a supervisor, new rules that previously did not exist, were put into effect. Shortly after his demotion, these rules were revoked.   Upon information and belief, these rules were created for the purpose of setting Plaintiff up for failure.

26.    For example, while Plaintiff was a supervisor, Plaintiff was not permitted to send technicians from one borough to another borough. This rule negatively affected the efficiency of Plaintiff's work. Before Plaintiff was a supervisor, there was no such rule. This rule was revoked shortly after Plaintiff was demoted. (In fact, after his demotion, Plaintiff himself was sent by his supervisor to work in several boroughs.)

27.    While Plaintiff was a supervisor, technicians were permitted to decide with whom they wished to work based on their seniority. As a result of the negative information being spread by Plaintiff's superiors and co-workers about Plaintiff, technicians did not want to work under him. Thus, Plaintiff was either forced to work with the least experienced technicians, negatively impacting on his production, or forced Plaintiff to do the job himself without any assistance. Before Plaintiff was a supervisor, there was no such seniority rule, thus permitting supervisors to select the most skilled technicians to assist him. This rule was revoked shortly after Plaintiff was demoted.

28.    Plaintiff was discriminated against after being demoted as well. For example, Plaintiff was given only $100 to purchase work shoes while other technicians were given more money to purchase work shoes. There was also a significant delay in Plaintiff receiving his work shoes.

29.    Further, while other employees are often given the opportunity to work overtime, Plaintiff is regularly overlooked for overtime. When Plaintiff complained about his unfair exclusion from receiving overtime work, Plaintiff's supervisor told him similar to the following: "Mistakes can happen; and you may not be called at all." Plaintiff continued to be overlooked for overtime after being told this comment. (This failure to give Plaintiff overtime work is also a breach of the settlement agreement relating the previous lawsuit, pursuant to which the Employer promised that it will not discriminate against Plaintiff with respect to providing him with overtime opportunities on an equal basis with other employees.)

30.    Plaintiff was forced to work overtime on Thanksgiving in 2006, even though that was Plaintiff's scheduled day off. By contrast to Plaintiff, other employees were not forced to work a holiday on their days off. When Plaintiff complained about this unfair treatment, the Employer tried to switch Plaintiff's schedule in such a manner that it could avoid paying him overtime.

31.    The Employer kept on making payroll errors regarding Plaintiff,

32.    The Employer delayed providing Plaintiff with an appropriate van at work but did not delay providing appropriate vans to other employees who needed them.

33.     Management has been aware of ongoing cursing at Plaintiff by Supervisors Long and Lazerus and technicians Miranda, Monaco, Mario and other employees. Yet, management has not taken any actions against these employees.

34.     After Plaintiff's demotion, he was required by his supervisor to call in on arrival and to sign in and out of Branch offices upon arrival and departure. This was not required of other employees.

35.     When Plaintiff was supervisor, Employer had a rule that technicians may not be rerouted after they were on the way to an assignment, because to do so would be considered harassment. After Plaintiff's demotion, he has been rerouted by his supervisor on several occasions.

36.     When Plaintiff needed a handicapped parking spot, he was given a much more difficult time by the Employer in obtaining the right to such a spot than other employees who needed such spot.

37.     Plaintiff was subjected to a hostile work environment at the Employer that was severe and pervasive.

38.     The Employer, by harassing Plaintiff, has discriminated against Plaintiff on the basis of his religion in violation of the N.Y.C. Human Rights Law.

39.     As a result of the Defendants' discriminatory actions described in this First Cause of Action, Plaintiff has suffered a loss in wages. Further, Plaintiff has suffered personal injuries including, but not limited to, emotional distress, humiliation, mental anguish and loss of enjoyment of life, and is entitled to compensatory damages.

40.     A copy of this complaint has been filed with the New York City Commission on Human Rights and the New York City Corporation Counsel.

## AS AND FOR A SECOND CAUSE OF ACTION
## RETALIATION - NEW YORK CITY HUMAN RIGHTS LAW DISCRIMINATION

41.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 as if set forth fully herein.

41A.    Following Plaintiff's lawsuit and settlement of such lawsuit, in which Plaintiff complained of religious discrimination relating to promotions, Plaintiff was discriminated against and otherwise treated badly by the Employer, as described above in the complaint. Upon information and belief, such bad treatment was in retaliation for

Plaintiff's claim of religious discrimination in violation of the N.Y.C. Human Rights Law.

42.    As a result of such retaliation, Plaintiff has suffered a loss in wages. Further, Plaintiff has suffered personal injuries including, but not limited to, emotional distress, humiliation, mental anguish and loss of enjoyment of life, and is entitled to compensatory damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

43.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 as if set forth fully herein.

44.    Following the lawsuit alleging religious discrimination brought by Plaintiff in 2003, the parties entered into a settlement agreement in August 2004 to resolve the lawsuit. The agreement provided for certain compensation and certain other rights to be granted to Plaintiff, the relevant ones which will be discussed below.

45.    The Employer violated the terms of the settlement agreement, in that Plaintiff was not subsequently given increases in salary taking into account his retroactive increase in salary pursuant to the settlement in the amount of $19,999.99.

46.    Similarly, under the terms of the settlement agreement the Employer promised to provide Plaintiff with overtime opportunities on an equal basis with other employees. In violation of the agreement, the Employer did not give such opportunities to Plaintiff on an equal basis with other employees. On the rare occasion that Plaintiff was called to do overtime, he was accused of "milking the job," making the job last longer than it was supposed to.

47.    Also, with respect to overtime, whereas other employees who came in on overtime days were permitted to work the entire day, from 7 a.m. to 6:45 p.m., Plaintiff was required to stop working on his overtime day at 2 p.m., thus, depriving him of an extra 4.75 hours of work and overtime pay.

48.    As a result of the Defendants' actions described in this Third Cause of Action Plaintiff has been damaged in the amount of approximately $25,000.00

WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

1.    On the First Cause of Action, the sum of ONE MILLION ($1,000,000.00)

DOLLARS, in damages for lost wages and compensatory damages, plus statutory attorneys fees.

2.    On the Second Cause of Action, the sum of ONE MILLION ($1,000,000.00) DOLLARS, in damages for lost wages and compensatory damages, plus statutory attorneys fees.

3.    On the Third Cause of Action, the sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS, plus an order compelling Defendant to comply with the terms of the August 2004 settlement agreement.

, together with the costs and disbursements of this action.

Dated: Suffern, New York
       December 12, 2007

Bernard Weinreb, Esq.
Attorney for Plaintiff
286A N. Main Street
Spring Valley, New York 10977
(845) 369-1019

To: New York City Off-Track
    Betting Corporation

8

Index No.:

## SUPREME COURT OF THE STATE OF NEW YORK
### COUNTY OF NEW YORK

-----------------------------------------------------------------

ZOLTAN FRENKEL,
   Plaintiff,

  -against-

NEW YORK CITY OFF-TRACK
BETTING CORPORATION
   Defendant.

-----------------------------------------------------------------

### SUMMONS AND COMPLAINT

-----------------------------------------------------------------

BERNARD WEINREB, ESQ.
Attorney for Plaintiff
286A N. Main Street
P.O. Box 1126
Spring Valley, New York 10977
(845) 369-1019

-----------------------------------------------------------------

To:

Attorney for Defendant

-----------------------------------------------------------------

Service of a copy of the within

      is hereby admitted

Dated,

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- x
ZOLTAN FRENKEL,

                                    Plaintiff,

                -against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

                                  Defendant.
-------------------------------------------------------------- x

**AFFIDAVIT**

Index No  100706/08

STATE OF NEW YORK   )
                     : SS.:
COUNTY OF NEW YORK  )

        **BARBARA S. EISMAN**, being duly sworn, hereby deposes and says

        1      I am a Special Assistant in the Legal Department in the New York City Off-Track Betting Corporation.  I have held this position for ten years.  As such, I am fully familiar with the facts and circumstances set forth herein based upon a review of the records maintained by the New York City Off-Track Betting Corporation's Legal Department ("OTB").

        2.      I submit this affidavit in support of the defendant's motion to dismiss.

        3      OTB maintains records of all notices of claim served upon it.

        4.      My duties as Special Assistant include maintaining the records of OTB pertaining to the receipt or service of notices of claim.  I am also in charge of logging the receipt or service of all notices of claim in OTB's records.

        5.      Pursuant to a request from Christopher L. Heer, Assistant Corporation Counsel, on March 21, 2008, I conducted a name search of the logbook regularly maintained in the OTB Legal Department in order to verify whether the OTB received or was served with any notices of claim by or on behalf of the above captioned plaintiff, Zoltan Frenkel.

1

6.    This search revealed that as of March 21, 2008, no notice of claim was

served by or on behalf of Zoltan Frenkel

BARBARA S EISMAN

Sworn to before me this
21st day of March, 2008.

NOTARY PUBLIC
IRA BLOCK
Notary Public, State of New York
No. 02BL5348425
Qualified in Westchester County
Commission Expires February 28, 20__

2

Index No.: 100706/08

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ZOLTAN FRENKEL,

Plaintiff,

-against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

Defendant.

**AFFIRMATION OF CHRISTOPHER L.
HEER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS**

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-317
New York, N.Y. 10007-2601

Of Counsel: Christopher L. Heer
Tel: (212) 788-0960

NYCLIS No. 2008-000147

*Due and timely service is hereby admitted.*

New York, N.Y. ..........................................., 2008

*Signed:* ...................................................................

*Attorney for* .............................................................

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------- x

ZOLTAN FRENKEL,

                                        Plaintiff,

           -against-

                                                    Index No.: 100706/08
NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

                                        Defendant.
------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NEW YORK CITY OFF-TRACK BETTING CORPORATION'S MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Zoltan Frenkel ("plaintiff") commenced this action by filing of a Summons and Complaint on or about January 16, 2008. Plaintiff is employed by the defendant New York City Off-Track betting Corporation ("OTB") as an Electronic Technician. Plaintiff herein alleges that OTB: (1) subjected him to a hostile work environment; (2) discriminated against him on the basis of his religion; (3) retaliated against him for his prior lawsuit and settlement agreement; and (4) breached an August 2004 settlement agreement.

OTB now moves to dismiss the complaint on the ground that plaintiff failed to serve a notice of claim against defendant as required under Racing, Para-Mutuel Wagering Law § 618 ("Racing Law"). Moreover, it is settled that Racing Law § 618 does not authorize the filing of a late notice of claim. Accordingly, as a matter of law, this action must be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff Zoltan Frenkel ("plaintiff") is an Electronic Technician employed OTB. In or about October 20, 2003, plaintiff filed a lawsuit against defendant. See Exhibit "A" (hereinafter "Complaint") at ¶ 5. In or around August 2004, a settlement agreement was entered into resolving the lawsuit and promoting plaintiff to the position of Supervising Electronic Technician. See Exhibit "A" at ¶ 7. Plaintiff indirectly alleges that the Settlement Agreement was breached in or around September 2004, when plaintiff's co-workers allegedly began receiving promotions and congratulatory letters but plaintiff received none. See Exhibit "A" at ¶ 8.

Plaintiff claims that beginning in or around September 2004, he was subjected to ongoing harassment by his supervisors and co-workers with tacit approval from OTB management. See Exhibit "A" at ¶ 8. Plaintiff claims that on or about June 10, 2005, plaintiff's supervisor, Executive Director Carmelo Fanfan called plaintiff a "dictator" when describing plaintiff's interaction with his subordinates. See Exhibit "A" at ¶ 20. Some time thereafter, plaintiff was demoted from his supervisory position back to his prior position as an Electronic Technician. See Exhibit "A" at ¶ 22. Plaintiff alleges that the discrimination continued after his demotion, consisting of being forced to work overtime on Thanksgiving in 2006 and being given only $100 for the purchase of work shoes. See Exhibit "A" at ¶¶ 28, 30.

On or about January 16, 2008, plaintiff commenced the instant action. See Exhibit "A."

---

[1] For the purposes of this motion to dismiss only, defendant treats the facts asserted in the complaint as true.

## ARGUMENT

### PLAINTIFF FAILED TO COMPLY WITH RACING LAW § 618 BY FAILING TO FILE A NOTICE OF CLAIM WITHIN NINETY DAYS OF ACCRUAL OF THE CLAIM

In order to commence an action against OTB, plaintiff must first have served a notice of claim upon the corporation within ninety days of accrual of the claims asserted. See Racing Law § 618.[2] Here, plaintiff has totally failed to serve OTB with any notice of claim, let alone within the required 90 day period following accrual of his claims. As such, plaintiff has not fulfilled a statutory condition precedent for commencing an action against OTB. See Zoll v.

---

[2] § 618 reads in full:

1. In every action against the corporation for damages, for injuries to real or personal property, or for the destruction thereof, or for personal injuries, the complaint shall contain an allegation that at least thirty days have elapsed since notice of claim was presented to the corporation and that the corporation has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

2. The notice of claim shall be in writing, sworn to by or on behalf of the claimant, and shall set forth:

    a. The name and post office address of each claimant, and of his attorney if any;

    b. The nature of the claim;

    c. The time when, the place where and the manner in which the claim arose; and

    d. The items of damage or injuries claimed to have been sustained so far as then practicable to determine.

3. The notice shall be served on the corporation by delivering a copy thereof, in duplicate, personally or by registered mail, to an officer, director or to any other agent authorized by appointment to receive such service.

4. The corporation may require any person presenting a claim to be sworn before a person authorized by the laws of the state to administer oaths, and when so sworn, to answer orally as to any facts relative to the claim.

5. Except in an action for wrongful death, an action against the corporation shall not be commenced more than one year and ninety days after the cause of action thereof shall have accrued, nor unless a notice of claim as required in subdivisions one and two of this section and served as set forth in subdivision three of this section shall have been served upon the corporation within ninety days after such cause of action shall have accrued. An action against the corporation for wrongful death shall be commenced in accordance with the notice of claim and time limitation provisions of title eleven of article nine of the public authorities law.

6. All actions against the corporation of whatever nature shall be brought and the place of trial shall be in the county within the city in which the cause of action arose, or if it arose outside of the city, in the county of New York. In no event shall an action against the corporation be brought or the trial be held in the small claims part of the New York city civil court.

3

Suffolk Reg'l Off-Track Betting Corp., 259 A.D.2d 696, 697 (2d Dep't 1999) (notice of claim requirement applies to any action for "damages," not just tort claims based on injury to personal property, real property, for personal injuries, including contract actions).

Here, plaintiff claims that he was subjected to harassment starting in September 2004 and that sometime thereafter, in or about April 2006, he was demoted. Further, he contends that most recently on or around Thanksgiving 2006, he was forced to work overtime as part of the discrimination to which he was subjected by the defendant. See Exhibit "A" at ¶ 30. In 2006, Thanksgiving fell on November 23, 2006. In order for plaintiff to have timely filed a notice of claim against defendant, plaintiff was required to have filed a notice of claim by February 21, 2007, the date which is 90 days subsequent to Thanksgiving 2006. However, at no time since then and up to the present has plaintiff filed a notice of claim, **and it is now thirteen months beyond the time in which plaintiff could have timely filed a notice of claim.** See Exhibit "B."

Moreover, plaintiff cannot now cure this fatal defect by seeking permission to file a late notice of claim; unlike General Municipal Law § 50-e, § 618 of the Racing Law makes no provision for service of a tardy notice of claim. See New York Racing Assn., Inc. v. New York City Off-Track Betting Corp., 2007 NY Slip Op 50110U, *4 (N.Y. Cty. 2007, Fried, J.) (contract claim that accrued more than ninety days before the filing of the notice of claim was invalid for failing to comply with notice of claim requirement of § 618); see also Marino v New York City Off-Track Betting, 12 A.D.3d 606, 607 (2d Dep't 2004) (§ 618 notice of claim requirement applies to claims of employment discrimination); Whitestone Shopping Center, Inc. v New York City Off-Track Betting Corp., 256 A.D.2d 331, 331-32 (2d Dep't 1998) (notice of claim required in an action to recover under a lease).

As plaintiff completely has failed to comply with a statutory condition precedent to commencing an action against the defendant OTB, this action must be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, OTB respectfully requests that this Court issue an order granting its motion to dismiss the complaint in its entirety, with prejudice, and award defendants such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
             March 21, 2008

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendant OTB
100 Church Street, Room 2-317
New York, New York 10007
(212) 788-0960

By: _____
     Christopher L. Heer
     Assistant Corporation Counsel

## AFFIRMATION OF SERVICE

STATE OF NEW YORK, COUNTY OF NEW YORK, SS:

The undersigned, an attorney admitted to practice in the courts of New York State, shows: that he is employed in the office of the Corporation Counsel of the City of New York, and affirms this statement to be true under the penalties of perjury, pursuant to Rule 2106 CPLR:

That on the 24th day of March, 2008, he served the annexed **REQUEST FOR JUDICIAL INTERVENTION** upon:

> Bernard Weinreb, Esq.
> Attorney for Plaintiff
> 286A North Main Street
> Spring Valley, New York 10977

being the address within the State theretofore designated by him/her for that purpose, by causing to be deposited a copy of the same, enclosed in a prepaid wrapper in a post office box situated at 100 Church Street in the Borough of New York, City of New York, regularly maintained by the Government of the United States in said City.

Dated:      New York, New York
            March 24, 2008

                                        CHRISTOPHER L. HEER

## AFFIRMATION OF SERVICE

STATE OF NEW YORK, COUNTY OF NEW YORK, SS:

The undersigned, an attorney admitted to practice in the courts of New York State, shows: that he is employed in the office of the Corporation Counsel of the City of New York, and affirms this statement to be true under the penalties of perjury, pursuant to Rule 2106 CPLR:

That on the 24th day of March, 2008, he served the annexed **REQUEST FOR JUDICIAL INTERVENTION** upon:

Bernard Weinreb, Esq.
Attorney for Plaintiff
286A North Main Street
Spring Valley, New York 10977

being the address within the State theretofore designated by him/her for that purpose, by causing to be deposited a copy of the same, enclosed in a prepaid wrapper in a post office box situated at 100 Church Street in the Borough of New York, City of New York, regularly maintained by the Government of the United States in said City.

Dated:     New York, New York
           March 24, 2008

CHRISTOPHER L. HEER

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.
100706/08

--------------------------------------------------------------X

ZOLTAN FRENKEL
          Plaintiff,

**AFFIRMATION OF
BERNARD WEINREB**

     -against-

NEW YORK CITY OFF-TRACK
BETTING CORPORATION
         Defendant.

--------------------------------------------------------------X

STATE OF NEW YORK       )
                        ) ss:.
COUNTY OF ROCKLAND    )

       BERNARD WEINREB, an attorney admitted to practice in the State of New

York, affirms the truth of the following under the penalties of perjury:

     1.    I am the attorney for the plaintiff, Zoltan Frenkel ("Plaintiff").

     2.    I submit this Affirmation in opposition to Defendant's Motion to Dismiss

and granting Plaintiff such other and further relief as this court deems just and proper.

     3.    Annexed hereto as Exhibit 1 is a copy of the Verified First Amended

Complaint in this matter.

     4.    Annexed hereto is a Memorandum of Law setting forth our arguments

opposing Defendant's motion to dismiss.

                                              _____
                                              Bernard Weinreb

Dated: June 6, 2008
       Spring Valley, New York

SUPREME COURT OF THE STATE OF NEW YORK        Index No.  100706/08
COUNTY OF NEW YORK
-----------------------------------------------------------X
ZOLTAN FRENKEL,
                    Plaintiff,


            -against-


NEW YORK CITY OFF-TRACK BETTING
CORPORATION,
                    Defendant.
-----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### Preliminary Statement

Plaintiff Zoltan Frenkel ("Plaintiff" or "Frenkel") respectfully submits this

memorandum of law in opposition to the motion of Defendant, New York City Off-Track

Betting Corporation ("OTB" or the "Employer")) to dismiss the complaint filed by

Plaintiff.

Plaintiff's complaint as originally filed set forth state law claims which Defendant

argues cannot be prosecuted because a notice of claim was not filed for those claims.

The complaint is now being amended in the form attached hereto as Exhibit A.

Plaintiff's complaint, as amended, now sets forth federal law claims for which a notice of

claim is not a prerequisite for commencing a lawsuit.  Thus, the motion to dismiss has

become moot, as the notice of claim argument falls away.

### Statement of Facts

The facts are set forth in the First Amended Complaint which is attached hereto as

Exhibit A.

Essentially, Plaintiff complains that he was discriminated against by being subjected to a hostile work environment, and was otherwise treated unfairly and discriminated against, because he is Jewish. He also complains that after he previously filed a lawsuit claiming religious discrimination and such case was settled by, among other things, promoting him to a supervisory position, he was retaliated against by the Employer. The Plaintiff also claims that the Employer breached its settlement agreement with Plaintiff by failing to live up to its promises under the agreement.

Please see details of the facts in the First Amended Complaint attached hereto.

## 1. ARGUMENT

### THE COMPLAINT HAS BEEN AMENDED TO CORRECT THE OBJECTIONS RAISED BY DEFENDANT IN ITS MOTION TO DISMISS

In its motion papers, Defendant argued that the case should be dismissed because Plaintiff failed to file a notice of claim, which is a prerequisite for commencing a lawsuit claiming state law claims against OTB.

In response to these objections raised by Defendant, Plaintiff has amended the complaint in the form attached hereto as Exhibit A under which the causes of action arise under federal law, which does not require a notice of claim, as discussed below.

Since the Defendant has not served a pleading responsive to the complaint, as the motion to dismiss served by Defendant is not considered a responsive pleading, and Plaintiff has not previously amended the complaint, CPLR Section 3025(a) permits Plaintiff to amend the complaint without leave of the court.

The Complaint, as amended, corrects all the objections that had been raised by Defendant.

2

## 2. ARGUMENT

### THE COMPLAINT HAS BEEN AMENDED BY REMOVING THE STATE LAW CLAIMS AND REPLACING THEM WITH A CLAIM UNDER FEDERAL LAW, § 1983

An action brought pursuant to Section 1983 may be initiated in either federal or state court. Martinez v. California, 444 U.S. 277 (1980).

A § 1983 claim will lie where the government takes negative action against an individual because of his [or her] exercise of rights guaranteed by the Constitution or federal laws." *Friedl v. City of New York*, 210 F.3d 79, 86-87 (2d Cir. 2000).

Section 1983 applies to deprivation of constitutional rights, such as ... contract rights .. freedom of religion ... equal protection of the law and due process. When under color of state law, Section 1983 prohibits discrimination based on any of the five grounds set forth in Section 703 of Title VII, that are race, color, sex, religion, or national origin. *See, e.g.,* Boutros v. Canton Regional Transit Authority (6th Cir. 1993)(national origin in employment); Strarrett v. Wadley, 876 F.2d 808 (10th Cir. 1989)(sexual harassment can violate Fourteenth Amendment and 1983); Keller v. Prince George's County, 827 F2d 952 (4th Cir. 1987); Russell v. Moore, 714 F.Supp. 883 (MD Tenn 1989)(Title VII, 1983 and pendant claims allowed in sexual harassment action)

A municipality can be sued under Section 1983. Monell v. New York City v. Dep't of Social Services, 436 U.S. 658 (1978).

Where there is an unconstitutional action by an official executing a government policy or custom, a municipality or other local entity is strictly liable under Section 1983 for monetary, declaratory or injunctive relief. Brandon v. Holt, 469 U.S. 464 (1985).

3

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress of the deprivation of rights established elsewhere." _Sykes v. James_, 13 F.3d 515, 519 (2d Cir. 1993). Here, it is undisputed that defendants were acting under the color of state law.

State notice of claim provisions, are not applicable to Plaintiff's civil rights claims asserted under 42 U.S.C. § 1983 as "where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'" _Felder v. Casey_, 487 U.S. 131, 138, 101 L. Ed. 2d 123, 108 S. Ct. 2302(1988)( _quoting Brown v. Western R. Co. of Alabama_, 338 U.S. 294, 296, 94 L. Ed. 100, 70 S. Ct. 105 (1949). In _Felder, supra_, the Supreme Court specifically held that because such conditions precedent to suit in state court may result in substantially different outcomes of litigation of civil rights actions, a state's notice of claim statute was pre-empted as inconsistent with federal law as "it conflicted in both its purpose and effects with the remedial objectives of § 1983." _Felder_, 487 U.S. at 138.

The Supreme Court has found that §1983 does not impose an exhaustion requirement on plaintiffs. _See, e.g._, _Patsy v. Board of Regents of State of Florida_, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ("[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."). As such, plaintiffs subject to bargained-for dispute resolution procedures set out in employment contracts need not exhaust those procedures prior to bringing suit under §1983.

Plaintiff asserts that defendant OTB, a city agency, subjected him to a hostile

work environment, and otherwise discriminated against him, on the basis that he is

Jewish. Plaintiff causes of action are now pursuant to Federal Law, § 1983. Accordingly,

there is no basis to dimiss the complaint, as there is no notice of claim requirement to sue

under federal causes of action.

## CONCLUSION

Based on the foregoing, it is respectfully requested that, in light of the amended

complaint that corrects the objection that had been raised by Defendant in its motion to

dismiss, Defendant's motion to dismiss be denied in all respects.

It is further respectfully requested that the Court grant such other and further relief

as it finds just and proper.

Dated: Spring Valley, New York
      June 6, 2008

                                      Bernard Weinreb, Esq.
                                        Attorney for Plaintiff
                                        P.O. Box 1126
                                        286A N. Main Street
                                        Spring Valley, New York 10977
                                        (845) 369-1019

TO:    Christopher L. Heer, Esq.
       CORPORATION COUNSEL of
       the CITY OF NEW YORK
       Attorney for Defendant
       100 Church Street
       New York, NY 10007
       (212) 788-0960

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK          Index No.
COUNTY OF NEW YORK
------------------------------------------------------------X
ZOLTAN FRENKEL,
        Plaintiff,

                                                  **FIRST AMENDED**
                                                  **COMPLAINT**

       -against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,
        Defendant.
------------------------------------------------------------X
       Plaintiff, complaining of the defendant herein by his attorney, BERNARD
WEINREB, ESQ., respectfully sets forth and alleges as follows:

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
DEPRIVATION OF FEDERAL RIGHTS - § 1983-
VIOLATION OF EQUAL PROTECTION UNDER THE LAW

    1.    Plaintiff is employed by the defendant, New York City Off-Track Betting
Corporation (this defendant is hereinafter referred to as "Employer") as an Electronic
Technician. He has been employed with the Employer since January 8, 1979.

    2.    At all times relevant to this action, the Employer was an agency of the City
of New York, was conducting business in New York City.

    3.    As set forth below in this Complaint, Plaintiff was subjected to a hostile
work environment and was otherwise discriminated against on the basis of his religion
by the Employer in violation of the equal protection law granted by the United States
Constitution and federal law. He was also retaliated against for opposing the
discrimination in violation of the United States Constitution and federal law. In addition,
the Employer has been in breach of a settlement agreement entered into by Plaintiff and
Defendant in May 2004 in violation of the United States Constitution and federal law,
and Plaintiff is seeking redress for such breach. His due process rights were also violated
in violation of the United States Constitution and federal law

    4.    Plaintiff is an Orthodox Jew who observes the Sabbath.

    5.    On October 20, 2003, Plaintiff brought a lawsuit against the Employer in
which he alleged that, on account of his religion, he was not promoted to a supervisory
position, even though he was qualified for the position.

6.  In August 2004, the lawsuit was settled.

7.  As part of the settlement, Plaintiff was promoted to the position of supervisor.

8.  Starting in September 2004, shortly after Plaintiff's promotion, Plaintiff began being subjected to ongoing harassment by his supervisors and co-workers, with the tacit of approval of management.

9.  The word was leaked out by the Employer that Plaintiff's promotion was given to him and was not competed for in a fair manner, causing resentment to his co-employees who were also vying for that position.

10. Whereas other employees who received promotions to supervisor after Plaintiff received congratulatory letters, no such letter was issued with respect to Plaintiff's appointment as supervisor. This different treatment made it obvious to employees that Plaintiff's promotion was a forced promotion.

11. Plaintiff's subordinates were insubordinate to Plaintiff, by not following his instructions and by otherwise acting in an inappropriate manner on an ongoing and steady basis towards Plaintiff but management condoned this insubordination. When Plaintiff complained to management about this, his complaints were ignored and, on some occasions, he was the one who was criticized.

12. Plaintiff's subordinate, Kenny Fingeret, constantly made anti-semitic comments to Plaintiff, saying that the Jews should be pushed into the sea, and similar comments. In addition, Mr. Fingeret constantly listened to hate radio at work in Plaintiff's presence. The Employer was aware of all these actions by Mr. Fingeret, but did nothing about it.

13. On one occasion, Plaintiff found an article about Kapos -- individuals who carried out he will of Nazi camp commandants and guards -- on his desk. Mr. Fingeret admitted bringing in this article, which was placed on Plaintiff's desk. Plaintiff complained to managment about this, but nothing was done.

14. Employees vandalized Plaintiff's property. For example, Plaintiff's car was keyed (scratched up by a metal object), his new chair was slashed, and coffee was poured on his chair and stepped upon to leave footprints. Although Plaintiff complained to management about this vandalism, nothing was done.

15.   The Employer made sure to have videos of employees not working and being involved in non-work related activities while on the job only at the time that Plaintiff was on duty as supervisor, but the Employer did not record these employees, or other employees, slacking off in this manner during any other supervisor's shift. Upon information and belief, this different treatment was done to foster animosity against Plaintiff by the employees who were reported by Plaintiff to have been slacking off. The employees caught slacking off were not brought up on charges.

16.   Defendant also encouraged the employees of the Employer's central repair facility, at which Plaintiff worked, to file complaints regarding Plaintiff to the Employer's internal Equal Employment Opportunity Commission ("EEO").

17.   The individuals in charge of the Employer's internal EEO, Doreen Wong and Martin Tall, were hostile towards Plaintiff and did not investigate the claims against Plaintiff in a fair manner. For example, Ms. Wong and Mr. Tall would not ask Plaintiff to provide them with his side of the story when investigating claims made against Plaintiff. By contrast, when Plaintiff complained about anti-semitic behavior to Ms. Wong and Mr. Tall, they dismissed the claim without investigating the matter.

18.   Management continuously made up rules and procedures for Plaintiff to put into effect for his subordinates while he was a supervisor. When the employees did not follow these rules, managment dropped these rules instead of bringing these employees up on charges for insubordination. (Two days after Plaintiff's demotion, these rules were reinstated and began being enforced against the Plaintiff only.)

19.   Plaintiff's superior, Executive Director Carmelo Fanfan, regularly took the side of Plaintiff's subordinates when Plaintiff had issues with his subordinates and co-workers.

20.   In a June 10, 2005 communication to Plaintiff, instead of being supportive of Plaintiff when Plaintiff expected his subordinates to comply with his orders, Mr. Fanfan called Plaintiff a "dictator" in describing Plaintiff's dealings with his subordinates.

21.   Following the June 10 communication, instead of bringing up Plaintiff's subordinates for insuborination, and backing up Plaintiff, Plaintiff was sent to supervisory training.

22.    Eventually, after not supporting Plaintiff and making it seem as if the problem was with Plaintiff, as opposed to those who were insubordinate to Plaintiff, Mr. Fanfan demoted the Plaintiff from his supervisory position back to Electronic Technician. This demotion was discriminatory as Plaintiff was correct in directing and, if necessary, disciplining his subordinates. Upon information and belief, from the time Plaintiff was promoted, managment, upset by the promotion resulting from the settlement, were seeking to have Plaintiff demoted.

23.    In December 2005, Plaintiff was instructed to "train" other supervisors. Upon information and belief, this was done to rile up the other supervisors against Plaintiff so that they should resent the fact that this new supervisor, i.e, the Plaintiff, is training them. Incidentally, the fact that the Employer had Plaintiff train other supervisors supports Plaintiff's assertion that he was an effective and knowledgable supervisor.

24.    During the 20 months that Plaintiff was supervisor, he was never written up, whereas other supervisors were written up. This is a further indication that Plaintiff performed satisfactorily as a supervisor.

25.    While Plaintiff was a supervisor, new rules that previously did not exist, were put into effect. Shortly after his demotion, these rules were revoked. Upon information and belief, these rules were created for the purpose of setting Plaintiff up for failure.

26.    For example, while Plaintiff was a supervisor, Plaintiff was not permitted to send technicians from one borough to another borough. This rule negatively affected the efficiency of Plaintiff's work. Before Plaintiff was a supervisor, there was no such rule. This rule was revoked shortly after Plaintiff was demoted.

26A.    In fact, after his demotion, Plaintiff himself was sent by his supervisor to work in several boroughs on several occasions, as recently as June 2008. In sending Plaintiff to these several boroughs, his seniority was ignored.

27.    While Plaintiff was a supervisor, technicians were permitted to decide with whom they wished to work based on their seniority. As a result of the negative information being spread by Plaintiff's superiors and co-workers about Plaintiff, technicians did not want to work under him. Thus, Plaintiff was either forced to work

with the least experienced technicians, negatively impacting on his production, or forced Plaintiff to do the job himself without any assistance. Before Plaintiff was a supervisor, there was no such seniority rule, thus permitting supervisors to select the most skilled technicians to assist him. This rule was revoked shortly after Plaintiff was demoted.

28. Plaintiff was discriminated against after being demoted as well. For example, Plaintiff was given only $100 to purchase work shoes while other technicians were given more money to purchase work shoes. There was also a significant delay in Plaintiff receiving his work shoes.

29. Further, while other employees are often given the opportunity to work overtime, Plaintiff is regularly overlooked for overtime. When Plaintiff complained about his unfair exclusion from receiving overtime work, Plaintiff's supervisor told him similar to the following: "Mistakes can happen; and you may not be called at all." Plaintiff continued to be overlooked for overtime after being told this comment. (This failure to give Plaintiff overtime work is also a breach of the settlement agreement relating the previous lawsuit, pursuant to which the Employer promised that it will not discriminate against Plaintiff with respect to providing him with overtime opportunities on an equal basis with other employees.)

30. Plaintiff was forced to work overtime on Thanksgiving in 2006, even though that was Plaintiff's scheduled day off. By contrast to Plaintiff, other employees were not forced to work a holiday on their days off against their wishes. When Plaintiff complained about this unfair treatment, the Employer tried to switch Plaintiff's schedule in such a manner that it could avoid paying him overtime.

30A. On or about August 22, 2007, in violation of our union contract, Plaintiff was given less than 24 hours notice that he was to work overtime that night.

31. The Employer kept on making payroll errors regarding Plaintiff. Upon information and belief, these errors were often done deliberately in order to harm Plaintiff.

32. The Employer delayed providing Plaintiff with an appropriate van at work but did not delay providing appropriate vans to other employees who needed them.

33.   Management has been aware of ongoing cursing at Plaintiff by Supervisors Long and Lazerus and technicians Miranda, Monaco, Mario and other employees. Yet, management has not taken any actions against these employees.

34.   After Plaintiff's demotion, he was required by his supervisor to call in on arrival and to sign in and out of Branch offices upon arrival and departure. This was not required of other employees.

35.   When Plaintiff was supervisor, Employer had a rule that technicians may not be rerouted after they were on the way to an assignment, because to do so would be considered harassment. After Plaintiff's demotion, he has been rerouted by his supervisor on several occasions.

36.   When Plaintiff needed a handicapped parking spot, he was given a much more difficult time by the Employer in obtaining the right to such a spot than other employees who needed such spot.

36A.   Defendant had, on several occasions, taken steps to prevent Plaintiff from receiving overtime work for which he was eligible. For example, on or about April 28, 2008, Defendant misstated Plaintiff's overtime hours, showing that he had more overtime than he actually had, so as to prevent him from being entitled to additional overtime. This happened on several other occasions as well.

36B.   In addition, Plaintiff was not informed of overtime opportunities, as were other employees, so as to preclude Plaintiff from working, and being paid for, overtime.

36C.   Upon information and belief, the Employer often deliberately changed payroll figures on several occasions. The most recent time for which Plaintiff was not paid what was due to him was on or about February 25, 2008.

36D.   As of the date of this amended complaint, most of the technicians use vans without GPS. However, the Employer requires Plaintiff to have GPS on his van so that the Employer can track Plaintiff's movements. Plaintiff was required to use the van with the GPS even though the van was unsafe in that it's defroster (and air conditioning) did not work.

36E.   In December 2007, the Employer ignored Plaintiff's complaints that the air conditioning and defroster did not work on the van that he was using. However, when

another technician who was given the same van to use complained about these problems, the Employer acknowledged the situation and did not require him to use the van.

36F.  On February 13, 2008, Plaintiff was not credited for a call that he had closed for the Employer that day, so that it should seem as if he did not work for the Employer that day.

36G.  On January 28, 2008, Plaintiff was sent to service OTB branches that were either closed or that opened late, so that he would need to sit around and wait for the branch to reopen.  This was a waste of Plaintiff's time, and made it appear as if he was not doing any work.

36H.  On January 28, 2008, Plaintiff was sent by the Employer to several boroughs without proper equipment.  Also, again on several occasions in February and March 2008, Plaintiff's supervisor, Scott Zagata, sent Plaintiff from borough to borough for the purpose of harassing Plaintiff.  He also deliberately did not inform Plaintiff as to what the calls in the branches were about so that Plaintiff would be unprepared to do the work he was supposed to do at the branches.

36I.  Whereas other employees are not criticized for incomplete paperwork, Plaintiff's paperwork is closely scrutinized and rejected for minor errors.

37.  Above are several examples of Plaintiff's mistreatment and harassment by the Employer.  Besides the examples listed in this complaint, there are several other instances when Plaintiff was treated less favorably than other employees of the Employer.

38.  Plaintiff was subjected to a hostile work environment at the Employer that was severe and pervasive.

39.  The Employer, by harassing Plaintiff, and by treating Plaintiff worse than other employees who are not Jewish, has discriminated against Plaintiff on the basis of his religion in violation of the Equal Protection Clause of the United States Constitution.

39A.  The Employer violated Plaintiff's constitutional rights, as described in this complaint, under color of state law.

39B.  As a result of this constitutional violation, Plaintiff is entitled to the remedies available under 42 U.S.C. Section 1983 for the injuries he sustained.

40.  As a result of the Defendants' discriminatory actions described in this First Cause of Action, Plaintiff has suffered a loss in wages.  Further, Plaintiff has suffered

personal injuries including, but not limited to, emotional distress, humiliation, mental anguish and loss of enjoyment of life, and is entitled to compensatory damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### RETALIATION - § 1983

41.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 as if set forth fully herein.

41A.    Following Plaintiff's lawsuit and settlement of such lawsuit, in which Plaintiff complained of religious discrimination relating to promotions, Plaintiff was discriminated against and otherwise treated badly by the Employer, as described above in the complaint. Upon information and belief, such bad treatment was in retaliation for Plaintiff's claim of religious discrimination in violation of the United States Constitution pursuant to § 1983.

41B.    The Employer violated Plaintiff's constitutional rights, as described in this complaint, under color of state law.

41C.    As a result of this constitutional violation, Plaintiff is entitled to the remedies available under 42 U.S.C. Section 1983 for the injuries he sustained.

42.    As a result of such retaliation, Plaintiff has suffered a loss in wages. Further, Plaintiff has suffered personal injuries including, but not limited to, emotional distress, humiliation, mental anguish and loss of enjoyment of life, and is entitled to compensatory damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### BREACH OF CONTRACT - § 1983

43.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 as if set forth fully herein.

44.    Following the lawsuit alleging religious discrimination brought by Plaintiff in 2003, the parties entered into a settlement agreement in August 2004 to resolve the lawsuit. The agreement provided for certain compensation and certain other rights to be granted to Plaintiff, the relevant ones which will be discussed below.

45.    The Employer violated the terms of the settlement agreement, in that Plaintiff was not subsequently given increases in salary taking into account his retroactive increase in salary pursuant to the settlement in the amount of $19,999.99.

46.    Similarly, under the terms of the settlement agreement the Employer promised to provide Plaintiff with overtime opportunities on an equal basis with other employees. In violation of the agreement, the Employer did not give such opportunities to Plaintiff on an equal basis with other employees. On the rare occasion that Plaintiff was called to do overtime, he was accused of "milking the job," making the job last longer than it was supposed to.

47.    Also, with respect to overtime, whereas other employees who came in on overtime days were permitted to work the entire day, from 7 a.m. to 6:45 p.m., Plaintiff was required to stop working on his overtime day at 2 p.m., thus, depriving him of an extra 4.75 hours of work and overtime pay.

47A.    The Employer violated Plaintiff's contractual constitutional rights, as described in this complaint, under color of state law.

47B.    As a result of this constitutional violation, Plaintiff is entitled to the remedies available under 42 U.S.C. Section 1983 for the injuries he sustained.

48.    As a result of the Defendants' actions described in this Third Cause of Action Plaintiff has been deprived his of his contractual rights protected under the United States Constitution pursuant to § 1983 and Plaintiff has been damaged in the amount of approximately $25,000.00

## AS AND FOR A FOURTH CAUSE OF ACTION
## FIRST AND FOURTEENTH AMENDMENT VIOLATIONS

49.    Paragraphs 1 through 48 are repeated and realleged the same as though pleaded in full.

50.    Upon information and belief, the Employer deprived Plaintiff of "equal protection of the laws" and "due process" under the Fourteenth Amendment of the United States Constitution. The Employer wrongfully deprived Plaintiff of these rights by discriminating against Plaintiff by harassing and mistreating him, and otherwise discriminating against him, because he is Jewish in violation of his rights to equal protection of the law.

51.    By mistreating and discriminating against Plaintiff, the Employer also deprived Plaintiff of his property right, to work at his job at the Employer without discrimination and harassment, in violation of his Due Process rights under the law.

52.    The Employer violated Plaintiff's constitutional rights, as described in this complaint, under color of state law.

53.    As a result of this constitutional violation, Plaintiff is entitled to the remedies available under 42 U.S.C. Section 1983 for the injuries he sustained.

WHEREFORE, Plaintiffs demand judgment against the Defendant as follows:

1.    On the First Cause of Action, the sum of ONE MILLION ($1,000,000.00) DOLLARS, in damages for lost wages and compensatory damages, plus statutory attorneys fees.

2.    On the Second Cause of Action, the sum of ONE MILLION ($1,000,000.00) DOLLARS, in damages for lost wages and compensatory damages, plus statutory attorneys fees.

3.    On the Third Cause of Action, the sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS, plus an order compelling Defendant to comply with the terms of the August 2004 settlement agreement.

4.    On the Fourth Cause of Action, the sum of ONE MILLION ($1,000,000.00) DOLLARS, in damages for lost wages and compensatory damages, plus statutory attorneys fees.

, together with the costs and disbursements of this action.

Dated: Suffern, New York
       June 5, 2008

Bernard Weinreb, Esq.
Attorney for Plaintiff
286A N. Main Street
P.O. Box 1126
Spring Valley, New York 10977
(845) 369-1019

## PLAINTIFF VERIFICATION

**STATE OF NEW YORK, COUNTY OF** *NASSAU*          **ss:**

Zoltan Frenkel, affirms and says under penalty of perjury:

I am the Plaintiff in the action herein; I have read the foregoing Complaint, know the contents thereof and the same is true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

Zoltan Frenkel

Affirmed to before me on this
6th day of June, 2008

NOTARY PUBLIC

JENNIFER A. WATTS
Notary Public, State of New York
No. 01WA6128888
Qualified in Nassau County
Commission Expires July 5, 2009

SUPREME COURT OF THE STATE OF NEW YORK          Index No.  100706/08
COUNTY OF NEW YORK
------------------------------------------------------------X
ZOLTAN FRENKEL,
                    Plaintiff,


            -against-


NEW YORK CITY OFF-TRACK BETTING
CORPORATION,
                    Defendant.
------------------------------------------------------------X

## AFFIRMATION OF SERVICE

STATE    OF    NEW    YORK,    COUNTY    OF    ROCKLAND
SS.:


            I, Bernard Weinreb, an attorney duly admitted to practice in the courts of
the State of New York, affirms and says that:  I am not a party to the within action; I am
over 18 years of age; I reside in the State of New York; and on the 6th day of June, 2008,
I served an Affirmation of Bernard Weinreb, Plaintiff's Memorandum of Law in
Opposition to Defendant's Motion to Dismiss, and Exhibit A (First Amended Complaint)
upon Christopher L. Heer, Esq., Corporation Counsel for the City of New York, 100
Church Street, New York, New York 10007 by first class mail.

                                        _____
                                        Bernard Weinreb


Dated:  June 6, 2008
        Spring Valley, New York

## CERTIFICATE OF SERVICE

I, Christopher L. Heer hereby certify that a copy of the attached Notice of

Removal was caused to be served on the party listed below by regular mail on July 2, 2008.

Bernard Weinreb, Esq.
Attorney for Plaintiff
286A North Main Street
Spring Valley, New York 10977

Dated:       New York, New York
             July 2, 2008

                                    Christopher L. Heer

Docket No. 08 Civ. _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZOLTAN FRENKEL,

                                        Plaintiff,

-against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

                                        Defendant.

## NOTICE OF REMOVAL

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-125*
*New York, N.Y. 10007*

*Of Counsel: Christopher L. Heer*
*Tel: (212) 788-0960*
*Matter No. 2008-000147*

*Due and timely service is hereby admitted.*

*New York, N.Y. .........................., 2008*

*........................................................ Esq.*

*Attorney for..........................................*